**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| DAVID ZIBBON<br>Individually and on Behalf of All Others<br>Similarly Situated, | : <br> : <br> : | |
| Plaintiffs, | : <br> : | Civil Action No. 8:13-cv-01244 (RWT) |
| v. | : <br> : | |
| COMPASS SYSTEMS, INC. | : <br> : | |
| Defendant. | : | |

## PLAINTIFFS' UNCONTESTED MOTION FOR APPROVAL OF ATTORNEY'S FEES AND REIMBURSEMENT OF LITIGATION COSTS

This Fair Labor Standards Act ("FLSA") collective action matter was settled on December 3, 2013. Pursuant to the parties' Stipulation and Proposed Settlement Agreement [Doc. 28], counsel for the Plaintiffs hereby file their motion seeking the Court's final approval of their fees and litigation costs incurred in this matter and the settlement of this matter.

The amount of attorney's fees and litigation costs has already been approved: (i) by the Plaintiffs, (ii) by the Defendant and its counsel, and (iii) preliminarily by the Court in its Order Granting Preliminary Approval of FLSA Collective Action Settlement [Doc. 30]. Accordingly, the parties hereby seek final Court approval of the undersigned's attorney's fees and reimbursement of litigation costs as part of the settlement of this FLSA Collective Action.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The named and putative Plaintiffs in this case are represented by the law firm of Rubin, Fortunato & Harbison P.C. (the "Rubin Fortunato firm").[1]   The Rubin Fortunato firm's investigation of this matter commenced over one year ago in March 2013 on behalf of a single individual who had been employed by the Defendant.  As the investigation progressed, it was determined that a potential collective action, instead of a single plaintiff case, would be warranted.  The proposed collective action anticipated a nationwide class of current and former employees of the Defendant.

In April 2013, the Rubin Fortunato firm filed a FLSA Collective Action Complaint in this Court (the "Zibbon" Case) [Doc. 1].[2]   At that time, there was one named Plaintiff (David Zibbon), who resided in Arizona.  For his work with Defendant, he primarily worked out of Arizona.  When Plaintiff Zibbon retained the Rubin Fortunato firm to be counsel in this matter, he executed a Contingency Fee Agreement/Letter of Representation (the "Contingency Fee Agreement") with the Rubin Fortunato firm.   In the Contingency Fee Agreement, Plaintiff Zibbon agreed to a standard contingency fee relationship which, in general, provided that; only in the event of a monetary recovery through a settlement or court award, the Rubin Fortunato firm would be entitled to reimbursement of litigation costs and a contingency fee of 33.3%.

Certainly, the geographic scope of the parties and the potential nationwide breadth of the class posed challenges for the Rubin Fortunato firm.  The Plaintiffs' position in the case was that their duties are routine and primarily mechanical in nature, and that they perform most of their

---

[1]      The Affidavit of Lead Counsel for Plaintiffs, Peter R. Rosenzweig, in Support of Plaintiffs' Uncontested Motion for Approval of Attorney's Fees and Reimbursement of Litigation Costs, attached hereto as Exhibit "A," is provided in support of this uncontested request for final approval of attorney's fees and litigation costs.

[2]      The Zibbon Case alleged that Defendant failed to pay certain overtime compensation to "similarly situated" current and former UAV Mechanic/Technicians ("UAV Mech/Techs") of Defendant.

work outside in the field.   By contrast, the Defendant contended that the UAV Mech/Techs perform professional type duties on sophisticated and developing technology, and that they often exercise independent judgment and discretion in evaluating conditions and troubleshooting technical problems as they arise.   Defendant further asserted that a 2012 United States Department of Labor investigation confirmed the FLSA exemption status of the category of employees at issue in the Zibbon Case.   Additionally, there were bona fide disputes between the Plaintiffs and the Defendant regarding the amount of overtime hours that have been worked by the UAV Mech/Techs.   Needless to say, it was quite apparent at the outset that a case involving disputed factual and legal issues was in store, with Plaintiffs living and, perhaps, working for Defendant throughout the United States.

The parties proceeded with the case.   They diligently participated in lengthy discovery involving: (i) the exchange of interrogatories and document requests (which included the exchange/review of close to seventeen hundred pages of relevant documents and numerous client and witness interviews), and (ii) the Fed. R. Civ. P. 30(b)(6) deposition of Defendant.   On October 30, 2013, this Court referred the case to the United States Magistrate Judge for a settlement conference. *See* Order (October 30, 2013) [Doc. 23].   On November 21, 2013, Chief United States Magistrate Judge William Connelly issued an Order scheduling the settlement conference for February 21, 2014. *See* Order (November 21, 2013) [Doc. 25].

In advance of the February 21, 2014 settlement conference, the parties on their own commenced settlement discussions.   On December 3, 2013, after weeks of negotiations, the parties reached an agreement in principle to settle the Zibbon Case.   The parties agreed to a class-wide settlement for the total sum of $155,000.   The parties further agreed that the settlement fund of $155,000 would be allocated amongst the Plaintiffs and the Rubin Fortunato

3

firm for reimbursement of its litigation costs and payment of its fees.   More specifically for purposes of this Motion and as described in greater detail below, pursuant to the Contingency Fee Agreement with Plaintiff Zibbon, the Rubin Fortunato firm is entitled to reimbursement of the litigation costs and 33.3% of the settlement for its attorney's fees.   As the parties discussed and agreed during their settlement negotiations, the Rubin Fortunato firm will not seek any fees over and above the $155,000 and will only be paid from the settlement fund.   Nor is the Rubin Fortunato firm seeking any enhancements to its fee.   The Defendant has already consented to a maximum fee of $51,615 (out of the $155,000) to the Rubin Fortunato firm.

Within days after reaching the settlement, the parties filed a Joint Status Report with the Court advising of the settlement.   *See* Joint Status Report (December 9, 2013) [Doc. 27].   The parties then spent countless hours together negotiating and preparing a collective action settlement agreement document, a joint motion for approval of the FLSA settlement, a proposed order granting approval of the FLSA collective action settlement, and notice and claims forms to be sent to the class members advising of their eligibility to opt-in to the settlement.   On January 10, 2014, these documents were filed with the Court [Doc. 29].   These documents contain detailed language exactly in line with the explanation above – that the Rubin Fortunato firm would seek as fees 33.3% of the settlement fund and that the Defendant would consent to that request and that amount.   This calculus is fair and reasonable as the Defendant has certainty as to the maximum amount of its monetary exposure, and the Rubin Fortunato firm and the class divide the available settlement fund based on their Contingency Fee Agreement.   The Court has already preliminarily approved these terms in the Order Granting Preliminary Approval of FLSA Collective Action Settlement [Doc. 30].

Accordingly, as part of the agreed-upon settlement and settlement procedure, the Rubin Fortunato firm now seeks the Court's final approval of its fees and reimbursement of litigation costs pursuant to the Contingency Fee Agreement with Plaintiff Zibbon, individually and on behalf of all others similarly situated.

## II.   STANDARD OF REVIEW FOR SETTLEMENTS AND APPROVAL OF ATTORNEY'S FEES PURSUANT TO THE FLSA

The standard of review for purposes of approval of the parties' settlement agreement in a FLSA case is less stringent than the review of a fee petition.  As Judge Quarles of this Court observed:

> There is a 'strong presumption in favor of finding a settlement fair.'  Because a settlement hearing is not a trial, the court's role is more 'balancing of likelihoods rather than an actual determination of the facts and law in passing upon . . . the proposed settlement.'

*Hoffman v. First Student, Inc.*, No. 06-1882, 2010 U.S. Dist. LEXIS 27329 (D. Md. March 23, 2010) (citing *Lomascolo v. Parsons Brinkerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, at *27, 28 (E.D. Va. June 23, 2009)); *accord Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008) ("'strong presumption' exists in favor of approval of settlement, and the bona fide dispute inquiry "must not be turned into a trial or a rehearsal of the trial.").

In awarding attorney's fees under the FLSA,[3] the Court should begin by determining the lodestar; "the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate."  *Lopez v. Lawns 'R' Us*, 07-2979, 2008 U.S. Dist. LEXIS 112120, at *14-15 (D. Md. May 23, 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  The number of hours it

---

[3]    As explained below, this is not a post-judgment fee petition in which the lodestar analysis would be applied.  Rather, the fee in the instant matter is the agreed-upon contingency fee available solely as a result of the successful settlement of this case.  Still, however, the contingency fee sought here by the Rubin Fortunato firm would satisfy the lodestar analysis as it is very fair and reasonable under the circumstances, and proportionate to the settlement fund amount and the monies available to all of the Plaintiffs.

was reasonable to devote to the case, and the reasonable hourly rates charged by personnel working on the case, are to be determined through consideration of the twelve Johnson factors, derived from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and endorsed in *Hensley*, 461 U.S. at 430 n.3 and *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee or rates; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*; *see Johnson*, 488 F.2d at 717-19. Additional circumstances may be taken into account which render the product of reasonable hours times reasonable rates an unduly high or low award of attorney's fees, such as the achievement of "exceptional success," which may justify an upward adjustment of the fee award. *Lopez*, 2008 U.S. Dist. LEXIS 112120, at *16 (*citing Blum v. Stenson*, 465 U.S. 886 (1984)); *Hensley*, 461 U.S. at 435.

In this case, the hours expended by Plaintiffs' counsel are reasonable, their rates are reasonable, and the final fee for which they seek approval of is reasonable. It is reasonable for Plaintiffs' counsel to seek one-third of the total settlement they procured with two-thirds going to the Plaintiffs.

### III. THE DIVISION OF THE SETTLEMENT AMOUNT AMONG PLAINTIFFS AND BETWEEN PLAINTIFFS AND COUNSEL, AND THE TERMS OF PAYMENT, ARE FAIR AND REASONABLE

As explained above, at the beginning of this case the Rubin Fortunato firm agreed to enter into a Contingency Fee Agreement with named Plaintiff Zibbon. The Contingency Fee Agreement specifically addressed the topics of attorney's fees and litigation costs with the following express language – language commonly found in standard contingency fee agreements:

-----------------------------------------------------------------

*Fees for Legal Services – Contingency Fee Arrangement*

*In consideration of the Firm's professional services rendered in the Litigation, you agree to pay a fee equal to thirty-three and one-third percent (33.3%) of the total gross sum recovered by way of settlement, court judgment or agency award, including any settlement or award of attorneys' fees. The percentage is calculated on the total amount of any settlement or court judgment obtained less costs and disbursements and is based on pre-tax dollars.*

*In the event of a settlement or award of attorneys' fees, you agree that the Firm's fee will be the greater of: (1) the settlement or award of attorneys' fees; or (2) the 33.3% fee identified in the prior paragraph.*

*In the event there is no recovery in the Litigation, you will not be obligated to pay any fee for the Firm's services.*

*Costs and Disbursements*

*The Firm shall advance all out-of-pocket costs and disbursements in the Litigation. You are not directly responsible to pay any of the costs and disbursements of the Litigation. The Firm's recovery of costs and disbursements is contingent upon a recovery being obtained. If no recovery is obtained, you will owe nothing for fees, costs and disbursements.*

*Please note that the Firm reserves the right to recover fees for services and any outstanding balances for expenses from the settlement proceeds or other recovery, if any, in connection with the Litigation. As a result, you agree that any settlement check or payment will be made payable to the Firm. The Firm will*

*then send you the balance of the settlement or other proceeds after appropriate adjustments for any outstanding fees and costs. Similarly, you agree that in the event of a settlement payable in installments, the Firm shall be entitled to reimbursement for all outstanding fees and costs from the first funds received.*

--------------------------------------------------------------

The named Plaintiff executed the Contingency Fee Agreement with this exact language and agreed to these terms. The named Plaintiff now consents to the Rubin Fortunato firm's recovery of attorney's fees and litigation costs as per these terms. And, further, the Defendant consents to the Rubin Fortunato firm's recovery of attorney's fees and litigation costs as per these terms.

Moreover, the final 33.3% fee sought to be approved here is extremely fair and reasonable as it is equitably proportionate in light of the total settlement amount and the amount of settlement monies that were made available to the named Plaintiff and the class members. Specifically, as of the date of this Motion, for this federal court collective action case, the Rubin Fortunato firm has incurred $2,243.61 in litigation costs.[4] Further, 33.3% of $155,000 equals $51,615 – which is the only attorney's fee the Rubin Fortunato firm now seeks approval of. This $51,615, however, does not all go to the Rubin Fortunato firm. Because the Rubin Fortunato firm is located in Pennsylvania, it was required to retain a local counsel in Maryland for this case. As such, the Rubin Fortunato firm has a separate agreement with its local counsel firm whereby it must compensate it for its work in this case. It has been agreed that the Rubin Fortunato firm will pay its Maryland local counsel <u>out</u> <u>of</u> the contingency fee payment it receives. In total, approximately $5,161.50 must be taken from the $51,615 to pay the Maryland

---

[4]     The parties acknowledge and understand that this number may change slightly in between the filing of this Motion and the final completion of this case (including the Final Hearing scheduled for April 21, 2014).

local counsel firm for the work it performed.  That leaves an approximate net fee of $46,453.50 for the Rubin Fortunato firm.

Accordingly, in line with a standard contingency fee relationship, here the clients are eligible to receive approximately two-thirds of the settlement fund and the law firms together are receiving approximately one-third of the settlement fund.  There are 15 eligible members of the Plaintiff class in this matter.  To date, 7 members of the class (46.66%) have opted to participate in the settlement.  After their reimbursement of the costs incurred to fund this litigation, these 7 participating Plaintiffs will share from this approximate $101,141.39 which has been made available to them through the settlement obtained by the Rubin Fortunato firm.  *See Hoffman*, 2010 U.S. Dist. LEXIS 27329, at *11 (Under the FLSA and the terms of the lead class members' Agreement with counsel, Plaintiffs' counsel may recover one-third of the damages award. Because this amount appropriately reflects the time spent and expenses incurred by Plaintiffs' counsel in this litigation, the fees and costs requested are reasonable and appropriate.).

## IV.    THE FEES SOUGHT TO BE APPROVED ARE REASONABLE AND PROPORTIONATE TO THE SETTLEMENT

As set forth above, the Rubin Fortunato firm and its Maryland local counsel firm are entitled to $51,615 in attorney's fees pursuant to the Contingency Fee Agreement.  Such an amount is reasonable given the circumstances of this case and the size of the settlement, and should be finally approved by the Court.  The fee to the Rubin Fortunato firm is not the product of an hourly fee award, but rather, is the product of a contingency fee arrangement articulated in the named Plaintiff's Contingency Fee Agreement.  Ultimately, in any contingency fee arrangement, the lawyer accepts the risk of expending far more time in comparison to the contingency fee received.  Conversely, in such arrangements, there are instances in which the

total amount of lawyer hours expended is small in comparison with the monetary result. The instant matter falls into the first scenario as, to date, over 270 hours have been expended on behalf of the Plaintiffs, reaching an hourly billing total of over $90,000. The contingency fee sought by the Rubin Fortunato firm is far less than the actual hourly fee total.

Though the common lodestar analysis is not technically required here as this is <u>not</u> a post-judgment petition seeking the award of fees over and above the judgment amount, application of the lodestar factors, does in fact, confirm that the fee for which the Rubin Fortunato firm seeks approval is fair and reasonable, especially insofar as it is proportionate to the size of the entire settlement fund and the amount of settlement money available to the settlement opt-in members.

To this end, typically, the twelve factors listed above comprise the appropriate standard in assessing the reasonableness of the hours and rates claimed. The 12-factor lodestar analysis is as follows:

1.    <u>The time and labor required.</u>

There was significant time and labor expended to investigate, commence, litigate, and settle this case. As lead counsel, the Rubin Fortunato firm has had at least two partners and one associate assigned to the case for the duration. Additionally, the case required time and resources from a local counsel firm in Maryland (where the case was brought). Between the Rubin Fortunato firm and its local counsel, over 270 hours have been expended on this engagement as of the filing of this request for approval and more hours will be required to monitor and finalize the settlement of this case.[5]

---

[5]        The time records/billing sheets of the Rubin Fortunato firm and the local counsel firm consist of almost fifty pages. Should the Court desire to review them, they can be produced. The undersigned attests to the amount of hours expended the Rubin Fortunato firm and the local counsel firm on behalf of the Plaintiffs. *See* Exhibit "A."

2.     <u>The novelty and difficulty of the questions</u>.

In essence, the primary issue in this case was whether the Plaintiffs (the "UAV Mech/Techs") were misclassified as "exempt" under the FLSA.[6]   In this case, there were numerous novel and difficult questions of both fact and law that affected the initial strategy and ultimately the discussions of settlement.  These difficult issues included, but were not limited to: (a) the "exemption classification" issue, (b) whether a 2012 Department of Labor investigation applied to the employees at issue in the Zibbon Case, and (c) the amount of time, during the relevant look-back period, that the Plaintiffs worked abroad and traveled to work assignments abroad.

3.     <u>The level of skill required to perform the legal service properly</u>.

The Rubin Fortunato firm attorneys possessed the skills and applicable knowledge necessary to handle this case properly from inception through settlement.  Lead counsel for the Plaintiffs, Peter Rosenzweig, is a 1994 *cum laude* graduate from the Schreyer Honors College at the Pennsylvania State University (graduated with Distinction and with Honors in Labor and Industrial Relations) and a 1997 *cum laude* graduate from the University of Miami School of Law.  He has close to seventeen years legal experience practicing exclusively in the area of labor and employment law in state and federal courts around the country.  He has handled numerous FLSA collective action cases and wage/hour issues for both employees and employers.  He heads the Individual Representation practice for the firm's Employment Practices Group.

His partner and co-counsel, Michael Fortunato, is the Chair of the firm's Employment Practices Group.  For over twenty years, he has represented clients in numerous trials and arbitrations involving virtually every aspect of the employment relationship.  Mr. Fortunato has

---

[6]      The specific issues in this case and bona fide disputes are detailed in the parties' Joint Motion for Order Certifying Plaintiff Class and Preliminarily Approving Stipulation and Settlement Agreement, Notice, and Claim Form [Doc. 29].

been recognized by other lawyers as one of Pennsylvania's top employment litigation lawyers since 2008. He received his undergraduate (1987) and law (1990) degrees from The Catholic University of America, where he served as an editor on the law review.

Messrs. Rosenzweig and Fortunato are frequent speakers/CLE presenters and, thus, are customarily updated on the FLSA and any developments in its application, and wage/hour laws in general.

Lauren Fuiman Cell, the associate in the Employment Practices Group at the Rubin Fortunato firm who worked on this case, is a *summa cum laude* graduate from Saint Joseph's University in Philadelphia (2006) and a *summa cum laude* graduate from the Earle Mack School of Law at Drexel University (2009). Before joining the firm, Ms. Cell served as a Judicial Clerk to the Honorable Timothy R. Rice, Magistrate Judge, United States District Court for the Eastern District of Pennsylvania as well as the Honorable Louis R. Meloni of the New Jersey Superior Court, Civil Division, Camden County. Ms. Cell's practice is dedicated solely to labor and employment law matters.

4.    The opportunity costs.

There is a drastic opportunity cost in taking on the representation of a class action case with multiple putative class members dispersed throughout the country. It is a massive undertaking with a significant drain on people power and firm resources. The commitment to take on such a matter is made knowing that other opportunities will necessarily have to be declined, and so was the case here.

The Rubin Fortunato firm has only 41 attorneys, the vast majority of whom spend their time exclusively on matters for the firm's existing clients. There were various cases and

representations that the Rubin Fortunato firm could not accept as a result of having so many people and resources dedicated to this case.

5.    The customary fee.

The contingency fee customarily utilized by the Rubin Fortunato firm in its contingency fee matters is 33.3% – the same as in the present matter.  The hourly fees customarily charged by the Rubin Fortunato firm to fee paying clients are:

Michael Fortunato:    $485.00

Peter Rosenzweig:    $400.00

Lauren Fuiman Cell:  $190.00

The fee for which the Rubin Fortunato firm now seeks approval is based on the same percentage that the firm would be entitled to in any of its other contingency fee matters. Moreover, it is less than what the total fee would have been had the Rubin Fortunato firm undertaken this representation on an hourly fee basis (approximately 270 hours totaling slightly over $90,000).  Importantly, the rates of the Rubin Fortunato firm attorneys as listed above fall squarely within the accepted rates identified in Appendix B of the Local Rules of this Court.

6.    The attorney's expectations at the outset of the litigation.

As stated throughout this Motion, the Rubin Fortunato firm accepted and handled this case on a contingency fee basis.  The Rubin Fortunato firm bore a substantial risk of developing and carrying this case through a federal court trial, especially against a sophisticated Defendant and its counsel who are experienced in the defense of FLSA matters.

7.    The time limitations imposed by the client or the circumstances.

Albeit not a time limitation, a unique limitation in this case did exist which presented additional hurdles for the Rubin Fortunato firm.  Specifically, due to the nature of their job, the

Plaintiffs travel to and spend extended periods of time (sometimes up to one year) abroad working in Afghanistan, creating obvious distance and time-difference issues.   This made meeting with and simply communicating with the Plaintiffs far more difficult and at times caused delays at crucial points during the litigation.   Notwithstanding this unique obstacle, the Rubin Fortunato firm was able to sufficiently communicate with the Plaintiffs to gather the necessary information and perform/provide the discovery required to bring this case to a successful resolution.   Not to mention, the fact that named Plaintiff Zibbon lives and works in Arizona.

8.      The amount involved and the results obtained.

As set forth above, it was at all times impossible to articulate the exact amount of money at stake as any estimation would presume to know the conclusions of a future finder of fact.   In consideration of such risk and uncertainty, Plaintiffs resolved this case and enjoyed significant success, agreeing to an available settlement fund of $155,000 for a 15 member class, and a settlement payment formula that could pay each settlement opt-in member a sum close to his/her overtime wages for the prior three year period.   The extremely high settlement participation rate of almost 50% indicates the Plaintiffs' satisfaction with the results obtained through this case and the settlement.

9.      The experience, reputation, and ability of the attorneys.

The experience of Plaintiffs' attorneys is set forth in detail above and fully justifies the reasonable contingency fee payment sought to be approved.   Plaintiffs' attorneys are highly skilled, experienced, and well-known practitioners in the area of employment law, especially in connection with FLSA and wage/hour issues.

10.    <u>The undesirability of the case</u>.

Many attorneys, even those who specialize in employment law, would decline representation in a FLSA collective action matter on a strict contingency fee basis with potentially hundreds of plaintiffs dispersed throughout the United States; many of whom could be overseas at any given time making the routine logistics of case investigation and discovery far more difficult.    Nonetheless, the Rubin Fortunato firm agreed to represent the Plaintiffs, navigated these cumbersome geographic and other issues, complex and novel substantive issues under the FLSA, and pursued Plaintiffs' claims to a successful settlement.

11.    <u>The nature and length of the professional relationship with the client</u>.

The Rubin Fortunato firm has represented the Plaintiffs from the outset of the case.  The relationship between the Rubin Fortunato firm and the named Plaintiff spans as far back as more than one year.  The attorneys at the Rubin Fortunato firm worked extremely close with the Plaintiffs to explore their employment relationship with the Defendant and analyze all wage and hour issues under the FLSA and any applicable state wage and hour laws.

12.    <u>Awards in similar cases</u>.

Each case that the Rubin Fortunato firm handles for a plaintiff client on a contingency fee basis requires a fee agreement providing a fee of 33.3% of any monetary recovery by way of a settlement or court award.  This is the standard.  In accord with that, the 33.3% of this settlement is fair and appropriate, and is exactly similar to the Rubin Fortunato firm's fee in other settled contingency fee cases.

## V.    **CONCLUSION**

The named Plaintiff here sought out the Rubin Fortunato firm and retained it to represent him and his similarly-situated UAV Mech/Techs in a case against the Defendant for alleged unpaid overtime compensation.  The named Plaintiff requested that the representation be on a contingency fee basis and the Rubin Fortunato firm agreed to that arrangement.  At the outset, the named Plaintiff and the Rubin Fortunato firm agreed that in the event of a monetary recovery either through a settlement or a court award, the Rubin Fortunato firm would be entitled to reimbursement of its litigation costs and a contingency fee equal to 33.3%.

The Rubin Fortunato firm took the massive risk of litigating this collective action matter with the possibility of no recovery.  After more than one year of work and significant devotion of labor and resources, the Rubin Fortunato firm was able to secure a robust settlement for the Plaintiffs – evidenced by the very high settlement opt-in rate.  Accordingly, the Rubin Fortunato firm in return asks only for the compensation the Plaintiffs agreed it would be paid in this event, *i.e.*, $2,243.61 in reimbursement of its litigation costs and the attorney's fee of 33.3% of $155,000, or $51,615.  The fee sought by the Rubin Fortunato firm is reasonable.  The fee sought by the Rubin Fortunato firm is proportionate to the total amount of settlement money available to the class members and is even less than the hourly total of work performed on the case.

With the consent of the Defendant, the Rubin Fortunato firm respectfully requests that the Court approve the reimbursement of its litigation costs and its contingency fee of $51,615.

Respectfully submitted,

RUBIN, FORTUNATO & HARBISON P.C.

Dated:   April 8, 2014

Peter R. Rosenzweig, Esq. *(pro hac vice)*
Michael J. Fortunato (*pro hac vice*)
Lauren Fuiman Cell (*pro hac vice*)
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
Paoli, PA 19301
Ph.  (610) 408-2004

Jeffrey R. Bloom
(Bar No. 18013)
5858 Hubbard Drive
Rockville, MD 20852
Dir. Tel: (443) 691-7930
Ofc. Tel: (202) 265-7755
Facsimile: (240) 235-4418

*Attorneys for Plaintiffs*

# EXHIBIT "A"

**RUBIN, FORTUNATO & HARBISON P.C.**
**10 SOUTH LEOPARD ROAD**
**PAOLI, PA 19301**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

DAVID ZIBBON                :
Individually and on Behalf of All Others   :
Similarly Situated,              :
                          :      Civil Action No. 8:13-cv-01244 (RWT)
        Plaintiffs,       :
                          :
    v.                     :
                          :
COMPASS SYSTEMS, INC.       :
                          :
        Defendant.       :

**AFFIDAVIT OF LEAD COUNSEL FOR PLAINTIFFS, PETER R. ROSENZWEIG, IN SUPPORT OF PLAINTIFFS' UNCONTESTED MOTION FOR APPROVAL OF ATTORNEY'S FEES AND REIMBURSEMENT OF LITIGATION COSTS**

    I, Peter R. Rosenzweig, being duly sworn, state as follows:

    1.    I am the lead attorney for the Plaintiffs in the above-captioned action and I am familiar with the file, record, pleadings, time records, and billings in this case.

    2.    On behalf of my firm – Rubin, Fortunato & Harbison P.C. – I have been lead counsel for the Plaintiffs in this FLSA collective action case since March 2013.

    3.    I am a shareholder at the Rubin Fortunato firm. I am a 1994 *cum laude* graduate from the Schreyer Honors College at the Pennsylvania State University (graduated with Distinction and with Honors in Labor and Industrial Relations) and a 1997 *cum laude* graduate from the University of Miami School of Law. I have close to seventeen years legal experience practicing exclusively in the area of labor and employment law in state and federal courts around the country. I've handled numerous FLSA cases and wage/hour issues for both employees and employers, including several FLSA collective actions in the U.S. District Court for the District of

Maryland.  I am the head of the Individual Representation practice for the firm's Employment Practices Group.

4.     My partner and co-counsel in this case, Michael Fortunato, is the Chair of the firm's Employment Practices Group.  For over twenty years, he has represented clients in numerous trials and arbitrations involving virtually every aspect of the employment relationship. Mr. Fortunato has been recognized by other lawyers as one of Pennsylvania's top employment litigation lawyers since 2008.  He received his undergraduate (1987) and law (1990) degrees from The Catholic University of America, where he served as an editor on the law review.

5.     Both I and Mr. Fortunato are frequent speakers/CLE presenters and, thus, are customarily updated on the FLSA and any developments in its application, and wage/hour laws in general.

6.     Lauren Fuiman Cell, the associate in the Employment Practices Group at the Rubin Fortunato firm who worked on this case, is a *summa cum laude* graduate from Saint Joseph's University in Philadelphia (2006) and a *summa cum laude* graduate from the Earle Mack School of Law at Drexel University (2009).  Before joining the firm, Ms. Cell served as a Judicial Clerk to the Honorable Timothy R. Rice, Magistrate Judge, United States District Court for the Eastern District of Pennsylvania as well as the Honorable Louis R. Meloni of the New Jersey Superior Court, Civil Division, Camden County.  Ms. Cell's practice is dedicated solely to labor and employment law matters.

7.     As our firm's sole office is located in Pennsylvania (outside of Philadelphia), we were required to retain a Maryland law firm to assist as local counsel in this matter.  Local counsel for the Rubin Fortunato firm in this case is Jeffrey R. Bloom, Esq.  Mr. Bloom, formerly Counsel at the Rosenthal Gormly firm, is located in Rockville, MD.  He bills at an hourly rate of

$275.00 for this case.  To date, Mr. Bloom has logged over seven hours on this case and will log more through the Final Hearing and consummation of the settlement process.

8.     As lead counsel for this case, the Rubin Fortunato firm has logged close to 270 hours itself to date and additional work will be required up to and including final completion of this case.  I have billed at an hourly rate of $400.00, Mr. Fortunato at an hourly rate of $485.00, and Ms. Cell at an hourly rate of $190.00.  Just for the Rubin Fortunato firm, the hourly billings to date are slightly greater than $90,000.00.

9.     The time records and billing sheets for the two law firms representing the Plaintiffs consist of almost fifty pages.

10.     All counsel for the Plaintiffs devoted significant amounts of time and resources for the duration of this case which involved very unique facts and complicated legal issues under the FLSA and applicable state wage and hour laws.  We represent 15 eligible Plaintiffs located throughout the United States.  We investigated the initial claims and developed the case; filed a Collective Action Complaint; conducted extensive pretrial discovery (including the Fed. R. Civ. P. 30(b)(6) deposition of Defendant's CEO); participated in additional, targeted discovery for settlement purposes; and engaged in several weeks worth of settlement discussions/negotiations with counsel for Defendant ultimately reaching a settlement in principle.  Significant time was then expended: (i) preparing the required settlement documentation and paperwork for notifying the class members of their eligibility to participate in the settlement, and (ii) monitoring the settlement opt-in claims process.  As of the date of this Affidavit, 7 (almost 50%) of the class members eligible to participate in the settlement of this case have voluntarily opted-in to the settlement procured by the undersigned.

      11.     It is submitted that the attorney's fees sought to be approved by Plaintiffs' counsel are fair and reasonable.  The 33.3% of the settlement amount represents the agreed-upon contingency fee set forth in the Plaintiff's Contingency Fee Agreement and, further, is proportionate to the amount of settlement funds made available to the Plaintiff class members who have participated in the settlement.

      I SOLEMNLY AFFIRM under the penalties of perjury that the contents of this Affidavit are true and correct to the best of my knowledge, information, and belief.

Date:   April 8, 2014

                                           PETER R. ROSENZWEIG

## CERTIFICATE OF SERVICE

I, Peter R. Rosenzweig, Esq., counsel for Plaintiffs, hereby certify that a true and correct copy of the foregoing *Plaintiffs' Uncontested Motion for Approval of Attorney's Fees and Reimbursement of Litigation Costs* was served on this 8th day of April, 2014, via ECF and email, on counsel for Defendant at the address listed below:


Nat P. Calamis, Esq.
Carr Maloney P.C.
2000 L Street, NW, Suite 540
Washington, D.C. 20036




Peter R. Rosenzweig, Esq.