IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| DAVID ZIBBON<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>COMPASS SYSTEMS, INC.<br><br>　　　　　Defendant. | :<br>:<br>:<br>:<br>:　Civil Action No. 8:13-cv-01244 (RWT)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**JOINT MOTION FOR ORDER GRANTING FINAL APPROVAL OF SETTLEMENT**

Plaintiff David Zibbon (the "Named Plaintiff" or "Plaintiff Zibbon"), individually and on behalf of a class of individuals he seeks to represent (the "Plaintiff Class"), and Defendant Compass Systems, Inc. ("Defendant" or "Compass"), by and through their respective counsel, hereby file this Joint Motion for an Order Granting Final Approval of the Stipulation and Proposed Settlement Agreement.

**I.    BACKGROUND**

On April 26, 2013, Plaintiff David Zibbon filed this lawsuit as a putative collective action under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201 *et seq.* and as a putative Rule 23 class action under the Arizona Minimum Wage Act ("AMWA"), *see* A.R.S. § 23-350, *et seq.*, alleging that Defendant failed to pay certain overtime compensation to "similarly situated" current and former UAV Mechanic/Technicians ("UAV Mech/Techs"). In the Complaint, Plaintiff Zibbon claims that he and other allegedly "similarly situated" at Defendant

UAV Mech/Techs were improperly classified as exempt under the FLSA and AMWA and thus denied time-and-a-half overtime compensation to which they are entitled for work performed in excess of 40 hours in a workweek.

Defendant answered the Complaint, denying all material allegations and asserting a number of affirmative defenses, *i.e.*, that the Plaintiffs are not entitled to overtime compensation for any work that they performed outside the United States, and that, with respect to work performed in the United States, they are exempt from the FLSA's and AMWA's overtime requirements under the "professional employee" exemption. Defendant further asserted that a 2012 United States Department of Labor investigation confirmed that there were no FLSA violations in connection with the category of employees at issue in this FLSA collective action.

The parties proceeded with the case. They diligently participated in lengthy discovery involving: (i) the exchange of interrogatories and document requests (which included the exchange/review of close to seventeen hundred pages of relevant documents and numerous client and witness interviews), and (ii) the Fed. R. Civ. P. 30(b)(6) deposition of Defendant. On October 30, 2013, this Court referred the case to the United States Magistrate Judge for a settlement conference. *See* Order (Oct. 30, 2013) [Doc. 23]. On November 21, 2013, Chief United States Magistrate Judge William Connelly issued an Order scheduling the settlement conference for February 21, 2014. *See* Order (Nov. 21, 2013) [Doc. 25].

In advance of the February 21, 2014 settlement conference, the parties on their own commenced settlement discussions in earnest. On December 3, 2013, after weeks of negotiations, the parties reached an agreement in principle to settle the case as a FLSA collective action settlement. Within days after reaching the settlement, the parties filed a Joint Status Report with the Court advising of the settlement. *See* Joint Status Report (Dec. 9, 2013) [Doc.

2

27]. The parties then spent countless hours together negotiating and preparing a FLSA collective action settlement agreement document, a joint motion for approval of the FLSA settlement, a proposed order granting approval of the FLSA collective action settlement, and notice and claims forms to be sent to the class members advising of their eligibility to opt-in to the FLSA collective action settlement. On January 10, 2014, these documents were filed with the Court [Doc. 29].

The parties negotiated a full settlement, as set forth in the Stipulation and Settlement Agreement ("Settlement Agreement") [Doc. 28], which settles and compromises fully all claims asserted with respect to the compensation of UAV Mech/Techs in the lawsuit and all claims nationwide arising from or related to the lawsuit or which have been or might have been asserted based on or arising out of any acts, facts, transactions, occurrences, representations or omissions alleged in the lawsuit. This Settlement Agreement was reached as a result of lengthy and detailed, arms-length settlement negotiations between counsel.

Pursuant to the parties' Settlement Agreement, Defendant will make a maximum payment of $155,000.00 to the members of the Plaintiff Class who opt-in to the settlement, inclusive of attorneys' fees, settlement administration fees, litigation costs, an incentive award to the Named Plaintiff, and required employer withholdings. *See* Settlement Agreement, §§ III.C-G. Each member of the Plaintiff Class who submits a timely, valid Claim Form will receive a minimum payment of $1,000. In addition, all members of the Plaintiff Class who submit timely, valid Claim Forms will also be eligible to receive an additional payment to the extent that they worked any overtime hours (*i.e.*, above 40 hours in a workweek) in the United States as an UAV Mech/Tech during the relevant timeframe. *See id.*, § III.G.

On January 23, 2014, this Court granted preliminary approval of the parties' Settlement Agreement, finding that it was fair, adequate, reasonable, and in the best interests of the

members of the Plaintiff Class. *See* Order Granting Preliminary Approval of FLSA Collective Action Settlement ("Preliminary Approval Order"), ¶ 2, (Jan. 23, 2014) [Doc. 30]. The Court also approved the parties' proposed Notice and Claim Form, and the retention of Heffler Claims Administration ("Heffler") as the Settlement Administrator. *Id.*, ¶¶ 4-5. The Court ordered that any members of the Plaintiff Class who wished to participate in the settlement return their completed Claim Forms to the Settlement Administrator by not later than April 4, 2014 (the "Claim Deadline"). *Id.*, ¶ 6. Finally, the Court explained that members of the Plaintiff Class could object to the terms of the proposed settlement by filing written objections with the Court in advance of the Final Approval Hearing on April 21, 2014, and/or by appearing and being heard at the Final Approval Hearing. *Id.*, ¶¶ 6-7.

On February 11, 2014, Heffler printed and mailed the Court-approved Notices and Claim Forms to the 15 members of the Plaintiff Class via postage pre-paid, first-class USPS mail. *See* **Exhibit 1**, Declaration of Brian Radetich (the "Declaration"), ¶ 5; *see also* the Notice and Claim Form, Exhibit A of the Declaration. On that same day, Heffler also emailed copies of the Notice and Claim Form to the 15 members of the Plaintiff Class for whom Defendant had email addresses. Ex. 1, ¶ 5. (Defendant does not retain current email addresses for all former employees, but provided Heffler with the email addresses of all current employees and the email addresses of former employees to the extent they were available).

As of this date, Heffler has received a total of 7 timely, valid Claim Forms from the 15 members of the Plaintiff Class. *Id.*, ¶ 11.


members of the Plaintiff Class. *See* Order Granting Preliminary Approval of FLSA Collective Action Settlement ("Preliminary Approval Order"), ¶ 2, (Jan. 23, 2014) [Doc. 30]. The Court also approved the parties' proposed Notice and Claim Form, and the retention of Heffler Claims Administration ("Heffler") as the Settlement Administrator. *Id.*, ¶¶ 4-5. The Court ordered that any members of the Plaintiff Class who wished to participate in the settlement return their completed Claim Forms to the Settlement Administrator by not later than April 4, 2014 (the "Claim Deadline"). *Id.*, ¶ 6. Finally, the Court explained that members of the Plaintiff Class could object to the terms of the proposed settlement by filing written objections with the Court in advance of the Final Approval Hearing on April 21, 2014, and/or by appearing and being heard at the Final Approval Hearing. *Id.*, ¶¶ 6-7.

On February 11, 2014, Heffler printed and mailed the Court-approved Notices and Claim Forms to the 15 members of the Plaintiff Class via postage pre-paid, first-class USPS mail. *See* **Exhibit 1**, Declaration of Brian Radetich (the "Declaration"), ¶ 5; *see also* the Notice and Claim Form, Exhibit A of the Declaration. On that same day, Heffler also emailed copies of the Notice and Claim Form to the 15 members of the Plaintiff Class for whom Defendant had email addresses. Ex. 1, ¶ 5. (Defendant does not retain current email addresses for all former employees, but provided Heffler with the email addresses of all current employees and the email addresses of former employees to the extent they were available).

As of this date, Heffler has received a total of 7 timely, valid Claim Forms from the 15 members of the Plaintiff Class. *Id.*, ¶ 11.

## II. **STANDARD OF REVIEW**

In assessing whether to approve a proposed FLSA collective action settlement, "there is a 'strong presumption in favor of finding a settlement fair.'" *Hoffman v. First Student, Inc.*, Civ. No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010) (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)); *see also Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010) (explaining that FLSA collective action settlements should be approved if they "reflect a reasonable compromise over issues") (internal quotation omitted). "Although the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of [FLSA collective action] settlements, district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Edelen v. Am. Residential Servs., LLC*, Civ. A. No. DKC-11-2744, 2013 WL 3816986, at *10 (D. Md. July 22, 2013) (citing *Hoffman*, 2010 WL 1176641, at *2; *Lopez*, 748 F. Supp. 2d at 478).

Under *Lynn's Food Stores*, a FLSA settlement "generally should be approved if it reflects 'a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Edelen*, 2013 WL 3816986, at *10 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Therefore, in assessing whether a FLSA settlement merits approval, "as a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are 'actually in dispute.'" *Id.* (quoting *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011)); *see also Lomascolo*, 2009 WL 3094955, at *16.

If there are *bona fide* issues in dispute, then, "[a]s a second step, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness." *Edelen*, 2013 WL 3816986, at *10. In assessing the fairness and reasonableness of a proposed FLSA

settlement, courts in the Fourth Circuit "'have analogized to the fairness factors generally considered for court approval of class action settlements' under Rule 23(e)." *Hoffman*, 2010 WL 1176641, at *1 (quoting *Lomascolo*, 2009 WL 3094955, at *11). Rule 23(e), in turn, requires that (1) notice be provided in a "reasonable manner" to all class members; (2) the parties provide a statement identifying their agreement; and (3) there is an opportunity for class members to object. *See* Fed. R. Civ. P. 23(e); *see also Hoffman*, 2010 WL 1176641, at *1. In addition to these factors bearing on procedural fairness, the court must hold a hearing to determine whether the settlement is substantively "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Hoffman*, 2010 WL 1176641, at *1. In making this determination, the court must examine six factors: namely, "(1) the extent of discovery that has occurred; (2) the stage of proceedings, including the complexity, expense and likely duration of litigation; (3) evidence of bad faith or collusion in the settlement; (4) the experience of plaintiffs' counsel; (5) the opinions of class counsel and class members after receiving notice of the settlement—expressed directly or through failure to object; and (6) the plaintiffs' probability of success on the merits and the amount of settlement compared with the potential recovery." *Hoffman*, 2010 WL 1176641, at *2 n.5 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975)); *see also Saman v. LBDP, Inc.*, Civ. A. No. DKC-12-1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013); *Galvez v. AmericleanServs. Corp.*, No. 1:11-cv-1351, 2012 WL 2522814, at *1 (E.D. Va. June 29, 2012); *In re Dollar General Stores FLSA Litig.*, No. 5:09-MD-1500, 2011 WL 3841652, at *2 (E.D.N.C. Aug. 23, 2011).

## III. DISCUSSION

Here, the parties' proposed settlement—which was negotiated and crafted over the course of a month in advance of a scheduled settlement conference with Chief Magistrate Judge Connelly—resolves a number of bona fide disputes over FLSA provisions. In addition, the proposed settlement comports with the procedural fairness requirements of Rule 23(e), and its terms are substantively reasonable, adequate, and fair.

### A. Bona Fide Disputes

The Settlement Agreement resolves several "bona fide disputes" between the parties regarding FLSA coverage and the amounts allegedly due to the members of the Plaintiff Class. *See Lomascolo*, 2009 WL 3094955, at *16-17. As previously explained, Defendant has denied Plaintiffs' allegations, including all claims of liability or damages. Moreover, there are bona fide disputes between the parties regarding the primary duties and responsibilities of the UAV Mech/Techs.

The Plaintiffs maintain that their duties are routine and primarily mechanical in nature, and that they perform most of their work outside in the field. By contrast, the Defendant contends that the UAV Mech/Techs perform professional type duties on sophisticated and developing technology, and that they often exercise independent judgment and discretion in evaluating conditions and troubleshooting technical problems as they arise. Defendant further asserts that a 2012 United States Department of Labor investigation confirmed that there were no FLSA violations in connection with the UAV Mech/Techs.

While the Named Plaintiff alleges that all UAV Mech/Techs are "similarly situated" within the meaning of the FLSA, Defendant maintains that the UAV Mech/Techs' duties and responsibilities vary in general and, further, may differ even more depending on the particular

location to which they are assigned. Finally, there are bona fide disputes between the Settling Parties regarding the amount of overtime hours that have been worked by the UAV Mech/Techs, and the amount of time the UAV Mech/Techs worked abroad and traveled to and from work assignments abroad. The parties' Settlement Agreement thus reflects a compromise of bona fide disputes, as required for judicial approval.

### B.     Procedural Fairness

In accordance with Rule 23(e), notice of this FLSA collective action settlement was provided in a "reasonable manner" to all 15 members of the Plaintiff Class. On or about February 6, 2014, Defendant provided Heffler with a mailing list of all members of the Plaintiff Class, which contained a total of 15 names, addresses, last four digits of Social Security numbers, and employee identification numbers. Ex. 1, ¶ 4. Defendant also provided Heffler with email addresses and telephone numbers for the Plaintiff Class members. *See id.*

In order to provide the best notice practicable, Heffler ran the mailing addresses through the USPS National Change of Address database and also performed address searches using the public and proprietary resources of Lexis/Nexis. *See id.,* ¶ 8. On February 11, 2014, Heffler printed and mailed Notices and Claim Forms to the 15 members of the Plaintiff Class via postage pre-paid, first-class USPS mail. Heffler also emailed Notices and Claim Forms to the members of the Plaintiff Class for whom email addresses were available. *Id.,* ¶ 5.

On March 14, 2014, Heffler mailed a duplicate copy of the Notice and Claim Form to the 14 members of the Plaintiff Class who had not yet submitted Claim Forms, reminding them of the requirement that completed Claim Forms would be accepted only if postmarked by the April 4, 2014 Claim Deadline. Heffler also emailed reminder Notices and Claim Forms to the Plaintiff Class members in this category for whom email addresses were provided. *Id.,* ¶ 9. As an

indication of the accuracy and effectiveness of the notice/mailing process, as of April 8, 2014, no Notices and Claim Forms were returned to Heffler by the post office without a forwarding address attached. *Id.,* ¶ 10. Ultimately, there were no Notices and Claim Forms that were deemed undeliverable.

The parties have filed their proposed Settlement Agreement with the Court, which is twenty-one pages in length, and contains a detailed explanation of the settlement terms and the procedures to be used for calculating the individual settlement awards. *See* Settlement Agreement [Doc. 28] (Jan. 10, 2014). Members of the Plaintiff Class also have been provided with an opportunity to object to the proposed settlement. As set forth in the Court-approved Notice that was mailed to all members of the Plaintiff Class, after submitting a Claim Form, any member of the Plaintiff Class may object to the proposed settlement by filing written objections with the Court in advance of the April 21, 2014 Final Approval Hearing, and/or by appearing and being heard at the Final Approval Hearing. *See* Settlement Agreement, Ex. 2. As of this date, no written objections whatsoever have been filed.

The parties have thus satisfied their obligations to provide reasonable notice to the members of the Plaintiff Class; to describe the terms of their proposed settlement; and to provide an opportunity for members of the Plaintiff Class to object to the proposed settlement. *See* Fed. R. Civ. P. 23(e).

C.   **Substantive Fairness**

In assessing the substantive fairness of a FLSA collective action settlement, the court must examine the following six factors: "(1) the extent of discovery that has occurred; (2) the stage of proceedings, including the complexity, expense and likely duration of litigation; (3) evidence of bad faith or collusion in the settlement; (4) the experience of plaintiffs' counsel; (5)

9

the opinions of class counsel and class members after receiving notice of the settlement—expressed directly or through failure to object; and (6) the plaintiffs' probability of success on the merits and the amount of settlement compared with the potential recovery." *Hoffman*, 2010 WL 1176641, at *2 (citing *Flinn*, 528 F.2d at 1173-74 (4th Cir. 1975)). Application of these factors demonstrates that the terms of the parties' proposed Settlement Agreement are eminently reasonable, adequate, and fair.

*First*, the parties have engaged in lengthy discovery and exchanged a substantial volume of documents and other information, which has been more than sufficient "to permit an accurate assessment of the merits of the case." *See Hoffman*, 2010 WL 1176641, at *2. In the eight months after the Complaint was filed and before a settlement in principle was reached, Defendant conducted a number of witness interviews, and provided almost two thousand pages of relevant documents to Class Counsel. Class Counsel conducted a detailed review of the data and documentation produced by Defendant, and spent considerable time with the Named Plaintiff, reviewing the documentation and conferring about the nature of the UAV Mech/Techs' job responsibilities, their compensation, and hours worked. Class Counsel also took the Fed. R. Civ. P. 30(b)(6) deposition of Defendant's CEO.

*Second*, with respect to the stage of the proceedings, and the complexity, expense, and likely duration of litigation, there were a number of bona fide disputes between the parties, which, if a settlement had not been reached, likely would have necessitated costly and protracted litigation. In particular, there were disputes regarding the primary duties and responsibilities of the UAV Mech/Techs, the exemption classification of the UAV Mech/Techs, the amount of overtime hours that have been worked by the UAV Mech/Techs, and whether the UAV Mech/Techs are "similarly situated" within the meaning of the FLSA. As in other cases in which

10

FLSA collective action settlements have been approved, "[t]hese proceedings advanced to a stage sufficient to permit the Parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo*, 2009 WL 3094955, at *11.

*Third*, there is no evidence of bad faith or collusion in the settlement; to the contrary, this settlement was reached as a result of arms-length negotiations during the course of an entire month. The parties' settlement negotiations were undertaken in preparation for the February 21, 2014 court-scheduled settlement conference with Chief Magistrate Judge William Connelly.

*Fourth*, Class Counsel—the law firm of Rubin, Fortunato & Harbison P.C.—is competent and experienced in handling FLSA collective action litigation, including several FLSA collective action cases in this United States District Court for the District of Maryland. This Court has previously found that Class Counsel would adequately represent the interests of the Plaintiff Class, *see* Preliminary Approval Order, ¶ 3, and the qualifications of Class Counsel are set forth in detail in Plaintiffs' Uncontested Motion for Approval of Attorney's Fees and Reimbursement of Litigation Costs [Doc. 31] (April 8, 2014) ("Plaintiffs' Motion for Attorney's Fees") at 11-12.

*Fifth*, (i) no members of the Plaintiff Class have yet filed objections to the proposed settlement, and (ii) almost 50% of the Plaintiff Class accepted the settlement by opting to participate in it. Both (i) and (ii) manifest the class members' opinions that the settlement was favorable. Moreover, Class Counsel has conducted a lengthy and thorough investigation of the claims against Defendant and the impact of the Settlement Agreement on the Named Plaintiff and the members of the Plaintiff Class. Based on that analysis and an evaluation of a number of

factors, including the defenses asserted by Defendant, the expense and delay associated with continued proceedings, and the uncertainty of the outcome of the litigation, Class Counsel believes that settlement with Defendant for the consideration and on the terms set forth in the parties' Settlement Agreement is fair, reasonable and adequate and in the best interests of the Named Plaintiff and the members of the Plaintiff Class. Although "counsel's opinion and recommendation as to the fairness and reasonableness of a settlement 'is not to be blindly followed by the trial court,' it is to be afforded some weight." *Lomascolo*, 2009 WL 3094955, at *12 (quoting *Flinn*, 528 F.2d at 1173). That is especially true where, as here, Class Counsel's opinion is consistent with the opinions of the members of the Plaintiff Class—none of whom have lodged objections to the settlement. *See generally Hoffman*, 2010 WL 1176641, at *2 (citing as evidence of the fairness of a proposed FLSA settlement the fact that "no class member has objected to the proposed settlement and the parties' counsel attest to the fairness of this proposal in their joint motion to approve the class-wide settlement").

*Sixth*, with respect to the Plaintiffs' probability of success on the merits and the amount of settlement compared with the potential recovery, Defendant has agreed to make a maximum payment of $155,000.00 to the members of the Plaintiff Class who opt-in to the settlement, inclusive of attorneys' fees, settlement administration fees, litigation costs, an incentive award to the Named Plaintiff, and required employer withholdings. *See* Settlement Agreement [Doc. 28] (Jan. 10, 2014), §§ III.C-G. Based on the preliminary calculations performed by the Settlement Administrator, a total of approximately $88,792.20 will be available for distribution to the 7 members (46.66%) of the Plaintiff Class who have submitted Claim Forms ("Settlement Collective Members") once these deductions have been made. *See* Ex. 1, Ex. B (Preliminary Settlement Calculations). Each of the 7 Settlement Collective Members who performed services

for Defendant between April 27, 2010 and April 26, 2013 will receive a minimum payment of $1,000, and all Settlement Collective Members will also be eligible to receive an additional payment to the extent that they worked any overtime hours (*i.e.*, above 40 hours in a workweek) in the United States as an UAV Mech/Tech during the relevant timeframe. *See* Settlement Agreement [Doc. 28], § III.G. Class Counsel and Defendant's counsel negotiated this settlement formula taking into account the alleged total amount of overtime compensation due to members of the Plaintiff Class, as well as the significant defenses raised by Defendant, the expense and delay associated with continued proceedings, and the uncertainty of the outcome of the litigation. Given these considerations, the total amount of the proposed settlement—as well as the apportionment of that amount—is fair, reasonable, and adequate.

## IV. CONCLUSION

For all the foregoing reasons, the parties respectfully request that the Court approve their Stipulation and Proposed Settlement Agreement and enter the accompanying Final Judgment and Order of Dismissal with Prejudice.

Respectfully submitted,

| /s/ | /s/ |
|---|---|
| Peter R. Rosenzweig, Esq. | Nat P. Calamis, Esq. |
| Lauren Fuiman Cell, Esq. | Suzanne Derr, Esq. |
| RUBIN, FORTUNATO & HARBISON P.C. | CARR MALONEY P.C. |
| 10 South Leopard Road | 2000 L Street, NW, Suite 450 |
| Paoli, PA 19301 | Washington, D.C. 20036 |
| (610) 408-2004 | (202) 310-5500 |
| prosenzweig@rubinfortunato.com | npc@carrmaloney.com |
| lfuimancell@rubinfortunato.com | sed@carrmaloney.com |
| *Counsel for Plaintiff David Zibbon, Individually and on Behalf of All Others Similarly Situated* | *Counsel for Defendant Compass Systems* |

DATED:   April 11, 2014